# In the United States District Court
# for the District of Utah, Central Division

FILED
U.S DISTRICT COURT
2006 AUG -3 A 11: 08
DISTRICT OF UTAH
BY:_____
DEPUTY CLERK

| | |
|---|---|
| REBECCA A. SCHMEISER, <br><br> Plaintiff, <br><br> vs. <br><br> JO ANNE B. BARNHART, Commissioner of Social Security, <br><br> Defendant. | **MEMORANDUM DECISION and ORDER** <br><br> Case No. 2:05 CV 647 JTG |

This matter is before the Court on claimant Rebecca Schmeiser's Petition for Review filed in response to the denial of claimant's request for Social Security benefits by both the Administrative Law Judge ("ALJ") and the Social Security Administration's Appeals Council. Plaintiff filed a brief with this Court, and the Commissioner filed a brief in response. At issue is whether it was proper for the ALJ to discount the opinions of claimant's treating physician, Dr. Larcom, during her analysis of claimant's Residual Functional Capacity ("RFC").

This Court has reviewed the record and has determined that the ALJ did not explicitly assign weight to the treating physician's opinions. Furthermore, the ALJ did not conduct the required six-factor analysis of the treating physician's opinions. As a result, this case is remanded to the ALJ to be reheard in a manner consistent with this Order.

## PROCEDURAL HISTORY

Claimant, Rebecca Schmeiser, filed an application for Disability Insurance Benefits on May 29, 2002. This application was denied initially, but upon reconsideration her

request for hearing was granted. The hearing was held on February 4, 2004 before an Administrative Law Judge (ALJ). The claimant and Dena Galli, a vocational expert, testified at the hearing. The ALJ denied her claim in an issued decision dated July 9, 2004. Schmeiser filed a timely request for review by the Appeals Council, and on June 23, 2005, the Appeals Council denied her request for review. Schmeiser has exhausted administrative remedies, and filed suit in federal court pursuant to 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

Claimant is a 54 year-old woman with a college education who has previously worked as a teacher aide, library assistant, and pre-school attendant. Claimant's medical record begins with treatment after being struck by a garage door in September 1998. Claimant continued working after recovering from this accident. Claimant was injured again by being struck by a wall divider that fell on her in April 1999, which required surgery on her shoulder in May 1999. Her recovery from that accident was interrupted by an automobile accident in November 1999. Claimant underwent additional surgery in March 2000, but this surgery failed to resolve all problems. Claimant had additional surgery in early 2003. Claimant alleges that her disability is due to severe hearing loss, left shoulder impingement, and bilateral carpal tunnel syndrome.

## THE FIVE STEP SEQUENTIAL PROCESS

There is a five step process to determine whether a claimant is disabled pursuant to 20 C.F.R. § 416.920:

1) If the claimant is performing substantial gainful work she is not disabled.

2) If the claimant is not performing substantial gainful work, her

>
> impairment(s) must be severe before she can be found to be disabled.
>
> 3) If claimant is not performing substantial gainful work and has a severe impairment(s) that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment(s) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, 20 C.F.R. § 404, the claimant is presumed disabled without further inquiry.
>
> 4) If the claimant's impairment(s) does not prevent her from doing her past relevant work, she is not disabled.
>
> 5) Even if the claimant's impairment(s) prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

20 C.F.R. § 416.920.

At step one the ALJ found that claimant had not engaged in substantial gainful activity for an extended period since her onset date (R. at 25).

At steps two and three the ALJ found that claimant's bilateral hearing loss, left shoulder injury, right shoulder pain, and bilateral carpal tunnel syndrome are "severe" impairments within the meaning of the Regulations, but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulation No. 4. *Id.*

At step four the ALJ looked to more medical evidence to help determine the nature and severity of the impairments and resulting limitations. The ALJ also noted claimant's testimony from the hearing. In assessing the claimant's credibility, the ALJ found that "claimant's allegations regarding her limitations are not totally credible." *Id.* The ALJ noted that claimant's testimony, including her report to one of the examining doctors "demonstrate that she is able to perform a significant range of daily activities" and that "the claimant's pain can be controlled with medication and treatment." (R. at 22). At the conclusion of step four the ALJ

found that claimant had the residual functional capacity to perform sedentary and light work with limitations in lifting, reaching, fingering, and exposure to noise. (R. at 25). The ALJ adopted the opinion of the vocational expert that the claimant could perform her past relevant work as a teacher's aide. (R. at 23, 26). However, the ALJ discounted the treating physician's testimony, and failed to determine the weight to be given to the treating physician's opinions as required.

The ALJ proceeded to step five where the burden shifts to the government to show that there is other work that exists in significant numbers in the national economy that claimant can perform. At this step the ALJ relied on the testimony of the vocational expert that given the claimant's residual functional capacity, educational background and past relevant work, she was capable of performing several jobs, including grading clerk, information clerk, and clerical sorter, and therefore claimant was not disabled. (R. at 26).

## ISSUES

Claimant presents two questions for review.

1) Whether the ALJ erred by failing to provide specific legitimate reasons for rejecting the opinion of Ms. Schmeiser's treating physician and failing to determine the weight to be assigned to his opinions?

2) Whether the ALJ erred by failing to provide specific support from the record for the residual functional capacity assessment?

## STANDARD OF REVIEW

The Court's review of the decision is limited to determining whether the "factual findings are supported by substantial evidence in the record viewed as a whole" and whether the correct legal standards were applied. *Castellano v. Secretary of Health & Human Services*, 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is "more than a mere scintilla. It means

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court may consider the specific rules of law that the ALJ must follow in "'weighing particular types of evidence,' but [the court] will not reweigh the evidence or substitute our judgment for the Commissioner's." *Joyce v. Barnhart*, 88 Fed.Appx. 320, 324 (10th Cir. 2004) (citations omitted).

ANALYSIS

1.   **The ALJ failed to specify what weight she gave the treating physician's opinions.**

The ALJ must explain what weight she gives to the treating physician's opinions, even if she does not give them controlling weight. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). In the case at bar, the ALJ did not specify what weight she gave to Dr. Larcom's opinions. In this regard, the ALJ is required to use a two-step process to determine the amount of weight a treating physician's opinions are due. First, if the treating physician's opinions are "well-supported" by clinical and laboratory diagnostic techniques and are consistent with other substantial evidence, then they are due "controlling weight." However, if they are not, the ALJ must then determine the amount of weight they should be assigned. 20 C.F.R. § 404.1527(d)(2); *Watkins*, 350 F.3d at 1300.

    A.   **Failure to make finding as to controlling weight or amount of weight given to treating physician's opinion**

Although the ALJ points out potential inconsistencies between Dr. Larcom's opinion and the rest of the record, she fails to declare that the treating physician's opinions were or were not given controlling weight. In this regard, the ALJ states that Dr. Larcom's report to the Social Security Administration "could not be adopted." This does not amount to an

unambiguous and specific finding for appellate review whether this report is given no weight or any weight. Further, the ALJ does not specify what weight is given, if any, to the other records and opinions submitted by Dr. Larcom. The ALJ does discuss some of these other records (*see* R. at 22-23), but does not a specify a weight given.

### B. Failure to make finding as to what weight is given to treating physician's opinion.

Generally, an ALJ gives significant weight to the claimant's treating physician's opinions because they are "most able to provide a detailed, longitudinal picture of [one's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." 20 C.F.R. § 404.1527(d)(2). The ALJ must clearly state the weight given to a physician's opinions. "[T]he notice of determination or decision must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins*, 350 F.3d at 1300 (quotation omitted).

The ALJ's discussion of Dr. Larcom's testimony and his opinions neither assigns a specific weight to his testimony, nor does it assign what weight she gave to Dr. Larcom's opinions. Her discussion was as follows:

> The undersigned [ALJ] has also considered the report submitted from the claimant's treating physician Peter Larcom, M.D. (Exhibit 12F). [R. at 289-90] In this report, he opined that the claimant had a left shoulder impingement and left carpal tunnel syndrome and that she needed surgery (Exhibit 12F p.1). Dr. Larcom opined that the claimant was unlimited in her ability to sit and stand (Exhibit 12F p.1). Dr. Larcom opined that the claimant could not use her left arm, that she could not lift any weight, and that due to her impairments, she would need to be absent from any work 4 or more times per month (Exhibit 12F p.2). The undersigned finds that this report could not be adopted. Dr. Larcom didn't specify what limitations, if any, the claimant has with her right upper extremity. Therefore, it is

>   unclear whether she would be able to lift with her right arm. Additionally, he
>   opined that the claimant would need to be absent from work due to her
>   impairments 4 or more times per month. There is no indication in the record of a
>   condition that would cause severe exacerbations resulting in absences. In
>   conclusion, the undersigned finds that the residual functional capacity outlined
>   below is more reflective of the claimant's level of functioning.

(R. at 23).

The ALJ only appears to seriously consider one of Dr. Larcom's reports, that of November 6, 2002. This report, a "Residual Functional Capacity Questionnaire," was apparently filled out at the request of the Social Security Administration, and is not the totality of the medical evidence submitted by Dr. Larcom. The ALJ does not explain why she is ignoring other medical evidence in the record from Dr. Larcom, the primary treating physician. Other medical records by Dr. Larcom in the record which could support his opinions, but were neither considered nor assigned a weight by the ALJ include:

1)   A report of June 7, 2002: "With regard to her shoulder on the right side, she has pain with any active use of the shoulder . . ." (R. at 238).

2)   A report of February 1, 2002: "She complains of near constant pain." (R. at 240).

3)   A report of December 16, 2002: "pt-can not use BUE." [presumably 'patient can not use both upper extremities'] "Diagnosis and Functional Ability Profile are based on: Laboratory and/or Other Specialized tests" and "X-Rays." ®. at 288).

4)   A report of January 24, 2003: "In addition, the patient has right shoulder complaints compatible with impingement." "With regard to the right shoulder, her symptoms are about the same, [sic] She has pain with lying on the right side as well as difficulty when she tries to forward flex or abduct the arm, particularly with the arm in internal rotation." ®. at 340).

Dr. Larcom, as treating physician, had much experience with claimant's right shoulder problems and intermittent pain. Since Dr. Larcom performed clinical diagnostic tests on claimant, his opinions that claimant should avoid lifting with the right arm and could suffer

-7-

pain severe enough to warrant missing work four or more times per month appear to have significant support in parts of the record not considered by the ALJ.

On remand, the ALJ should discuss all of the medical evidence submitted by Dr. Larcom. The ALJ's opinion on remand should make it clear what weight was given to each piece of evidence from Dr. Larcom.

### 2. The ALJ did not perform the required six-factor analysis in assigning weight to Dr. Larcom's opinions.

Even if the ALJ does not give the treating physician's opinion controlling weight, she must determine, through appropriate analysis, the amount of weight she will give the opinion.

> [A]djudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927. SSR 96-2p, 1996 WL 374188, at *4.

*Watkins*, 350 F.3d at 1300 (quotation omitted).

Those factors are:

> (1) the length of the treatment relationship and the frequency of examination;
>
> (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
>
> (3) the degree to which the physician's opinion is supported by relevant evidence;
>
> (4) consistency between the opinion and the record as a whole;
>
> (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and

> (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (quotation omitted). If the ALJ rejects the treating physician's opinion entirely, she must "give specific, legitimate reasons for doing so." *Watkins*, 350 F.3d at 1301 (quotations omitted).

In *Watkins*, an ALJ denied a claimant's application for benefits, discounting the testimony of the claimant's physician that the claimant's health problems rendered him unable to work. On appeal, the Tenth Circuit remanded for further consideration because "the ALJ offered *no* explanation for the weight, if any, he gave to the opinion of . . . the treating physician." *Id.* at 1300 (emphasis added).

Similarly, in *Robinson*, an ALJ denied a claimant's application for benefits, discounting the testimony of the claimant's physician. *Robinson*, 366 F.3d at 1080. The Tenth Circuit remanded for further proceedings because the ALJ failed to adequately explain why he did not give the treating physician's opinion controlling weight and "failed to specify what *lesser* weight he assigned" to the opinion. *Id.* at 1083.

As in *Watkins* and *Robinson*, in the case at bar, the ALJ did not analyze the medical record properly because she did not evaluate the treating physician's evidence according to the required factors. Even if denied controlling weight, "treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Watkins*, 350 F.3d at 1300. The Tenth Circuit has repeatedly reversed when ALJs have found disability by rejecting the treating physician's opinion without explicitly conducting the required six-factor analysis. *See Kay v. Barnhart*, 148

Fed.Appx. 711, 713 (10th Cir. 2005) (noting that ALJ must conduct six-factor analysis); *Scott v. Barnhart*, 123 Fed.Appx. 962, 963 (10th Cir. 2005) (same); *Young v. Barnhart*, 146 Fed.Appx. 952, 954 (10th Cir. 2005) (same).

The ALJ stated that she "could not adopt" Dr. Larcom's report, apparently assigning the report no weight. The ALJ did not explicitly undertake the required six-factor evaluation to support this conclusion. To assign no weight to the treating physician's report, the ALJ must give specific, legitimate reasons for her decision. However, because the ALJ did not perform the required six-factor evaluation, any reasons she gave are not adequately supported.

On remand, the ALJ must explicitly conduct the six-factor test and explain why, if she chooses to do so, she rejects the possibly salient parts of Dr. Larcom's opinion as well as the unsupported parts. For instance, the ALJ does not specifically question Dr. Larcom's findings of serious limitations of claimant's ability to use her hands, fingers, and arms (R. at 290), yet her RFC findings include that claimant has only "mild limitations in fingering." (R. at 23). Even if Dr. Larcom's reports are partially unreliable, it is not clear that all his findings should be completely rejected based solely on the reasons the ALJ states. The lack of clarity in the ALJ's opinion makes it difficult to determine whether the ALJ's findings are legally reasonable. The analysis will be simplified if the ALJ gives this Court the benefit of an explicit six-factor weighing of Dr. Larcom's opinions. This Court will then have the benefit of the ALJ's clear evaluation weighing potential inconsistencies between Dr. Larcom's evaluations and the rest of the record with the other required factors, such as length and nature of the treating relationship and the specialization of the doctor.

Defendant raises several arguments relating to the reliability of Dr. Larcom's

medical reports that were not addressed by the ALJ. However, "[t]he courts may not accept appellate counsel's post hoc rationalizations for agency action; *Chenery* requires that an agency's discretionary order be upheld, if at all, on the same basis articulated in the order by the agency itself." *Burlington Truck Lines, Inc. v. U.S.*, 371 U.S. 156, 168-169 (1962) (*citing Securities & Exchange Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). This Court must analyze the ALJ's opinion on its own merits, leaving further reweighing of the evidence for proceedings on remand. *See also Joyce v. Barnhart*, 88 Fed.Appx. 320, 324 (10th Cir. 2004) (citations omitted) (noting that the Court should not reweigh the evidence).

The ALJ's decision did not specify what weights were given to the opinions and reports of Dr. Larcom, and it did not properly apply the six-factor test in assigning these weights.[1]

Based upon the foregoing, it is hereby

ORDERED that the ALJ's decision is REMANDED for further proceedings consistent with this opinion.

DATED this 31st day of July, 2006.

J. THOMAS GREENE
UNITED STATES DISTRICT JUDGE

---

[1] Because the Court remands on the issue of assigning specific weight to the treating physician's opinions, the Court does not reach claimant's other issue, whether the ALJ failed to provide support from the record for her RFC findings. It appears to the Court that the claimant's arguments on this issue are not well-founded, but these arguments are not within the scope of the remand. This is not to say that the ALJ's RFC findings will remain unchanged–after the ALJ explicitly weighs all of Dr. Larcom's evidence under the six-factor test, she is free to modify her RFC findings if appropriate.